UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RODNEY SNYDER,
                        Plaintiff,

v.

PROVIDER MISS MONROE,
                        Defendant.
------------------------------------------------------------x

**OPINION AND ORDER**

15 CV 4033 (VB)

Briccetti, J.:

Plaintiff Rodney Snyder, proceeding pro se and in forma pauperis, brings this action under the Eighth Amendment, alleging defendant Nurse Valerie Monroe ("Nurse Monroe") was deliberately indifferent to plaintiff's serious medical needs.

Before the Court is defendant's motion for summary judgment. (Doc. #46).

For the reasons set forth below, defendant's motion is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

The parties submitted briefs, declarations with exhibits, and statements of material fact pursuant to Local Civil Rule 56.1,[1] which reflect the following factual background.

At all relevant times, plaintiff was incarcerated at Sing Sing Correctional Facility ("Sing Sing") and Nurse Monroe was employed by the New York State Department of Corrections and Community Supervision ("DOCCS") as a nurse practitioner at Sing Sing.

On May 16, 2012, plaintiff fell on the stairs at the Sing Sing Chapel, injuring his ankle. At approximately 1:15 p.m. that day, plaintiff was brought to the Sing Sing emergency room.

---

[1] Plaintiff's 56.1 statement contains quotations from his complaint as well as assertions without factual support in the record. To the extent plaintiff's 56.1 statement reflects the evidence contained in the documentary record, or facts adopted by the defendant in her moving papers, the Court construes those facts as undisputed.

1

I.   Examination by Nurse Wright

While in the emergency room, Nurse Shanise Wright ("Nurse Wright") performed a physical examination of plaintiff, who complained of pain in his left ankle. Nurse Wright palpated plaintiff's left ankle and noticed some slight swelling. Nurse Wright felt a "positive pulse," indicating blood was flowing properly through the left foot and ankle. (Wright Decl. ¶ 4).

Nurse Wright consulted Dr. Razia Ferdous, a Sing Sing physician, by phone. At Dr. Ferdous's direction, Nurse Wright performed a blood glucose test on plaintiff, who is diabetic. The test results were within the normal range. Nurse Wright also took plaintiff's blood pressure and performed an electrocardiogram, both of which returned normal results. Dr. Ferdous directed that plaintiff should be given 600 mg. of ibuprofen for pain.

There is no indication in plaintiff's medical chart[2] that Nurse Wright made a diagnosis at the time of her examination.

Nurse Wright's shift ended at 2:00 p.m. on May 16, 2012.

II.  Examination by Nurse Monroe

Nurse Monroe examined plaintiff on May 16, 2012, at approximately 2:00 p.m. Plaintiff told Nurse Monroe he "twisted his left ankle." (Turkle Decl. Ex. 4; Monroe Decl. ¶ 3). Nurse Monroe, like Nurse Wright, palpated plaintiff's left ankle. Nurse Monroe also noted some

---

[2]   The Court need not address plaintiff's conclusory assertion that the medical records, submitted as exhibits by both parties, were tampered with. In large part, plaintiff's medical records comport with plaintiff's own statements about the events of his injury and treatment as well as with the statements of non-parties. Moreover, the chart entries complained of—namely May 26 through May 30, 2012—are not submitted by defendant nor does the Court rely on them in deciding this motion.

swelling and a positive pulse. Nurse Monroe noted plaintiff was able to flex and extend his ankle and wiggle his toes.

Nurse Monroe ordered x-rays of plaintiff's left ankle, requesting three different x-ray angles—anterior, posterior, and lateral. Because there was no x-ray technician available that afternoon, these x-rays were taken the following day on May 17, 2012.

Nurse Monroe directed that plaintiff (i) keep his ankle elevated; (ii) receive six packages of pain medication; (iii) apply ice three times a day for seventy-two hours; (iv) be kept in "medical key-lock"[3] with "feed up," in which plaintiff would be confined to his cell with meals delivered to him; (v) keep his leg wrapped in an ACE bandage; and (vi) receive a set of crutches and instructions for how to use them.[4] (Monroe Decl. ¶ 10; Turkle Decl. Ex. 4). Nurse Monroe also directed plaintiff to follow up with his primary care provider, Dr. Tasbirul Alam, and gave plaintiff a pass to return to the infirmary the following day. According to plaintiff's deposition testimony, Nurse Monroe asked another nurse, presumably Nurse Conklin, to wrap plaintiff's left leg in an ACE bandage. (Turkle Decl. Ex. 9, 22:15–23:20).

---

[3] The Court construes this phrase to be mean medical keep-lock, as defendant refers to it elsewhere in her moving papers.

[4] A registered nurse, Nurse Patricia Conklin, also examined plaintiff around the same time as Nurses Wright and Monroe, although plaintiff's submissions do not mention Nurse Conklin by name. According to plaintiff's chart, Nurse Conklin treated plaintiff at 2:02 p.m. on May 16, 2012. (See Turkle Decl. Ex. 4). Nurse Conklin ordered an ACE wrap, ice for twenty-four hours, medical keep-lock with feed-up, crutches, x-rays to be taken the following morning, and ibuprofen. The chart times for Nurse Monroe and Nurse Conklin are concurrent, suggesting Nurse Conklin's order is a duplicative record of the order given by Nurse Monroe. Plaintiff said at his deposition that Nurse Wright and another nurse, presumably Nurse Conklin, treated him together when he first arrived at the emergency room. (Turkle Decl. Ex. 9, 20:12–21:2). Similarly, Nurse Monroe wrote in her declaration that she did not recall another nurse present with her in during her examination of plaintiff. (Monroe Decl. ¶ 11). These inconsistencies, although notable, are immaterial, as explained below.

3

Plaintiff's medical chart—including notes from all medical providers who saw him on May 16, 2012—does not contain any indication there was discoloration, visible bones, or other indicia of a broken ankle.

III. <u>Examination by Dr. Alam</u>

On May 17, 2012, at approximately 9:30 a.m., Dr. Alam examined plaintiff and reviewed the entries in plaintiff's chart. Dr. Alam checked plaintiff's blood pressure, respiration, and pulse, all of which were normal. Plaintiff's left leg was mildly swollen and his left ankle was wrapped in an ACE bandage.

Dr. Alam reviewed the x-rays ordered by Nurse Monroe. Upon viewing the x-rays, Dr. Alam did not detect evidence of a broken bone. Nevertheless, in accordance with his standard practice, Dr. Alam requested an official report from an outside radiologist, Dr. R.J. Mueller. In the interim, Dr. Alam continued the treatment ordered by Nurse Monroe and ordered plaintiff to keep his ankle wrapped with an ACE bandage. Dr. Alam also directed that plaintiff be issued a medical pass to allow plaintiff to be housed in a cell on the first floor and granted plaintiff access to the prison bus.

On May 19, 2012, Dr. Alam received the report from Dr. Mueller. The report indicated plaintiff sustained a fracture to his left medial malleolus—the prominence on the inner ankle.

On May 21, 2012, Dr. Alam prepared a "Request & Report of Consultation" (the "request"), directing that plaintiff be transported to an outside hospital for treatment. That same day, in accordance with the request, plaintiff was transported to Mt. Vernon Hospital for treatment and underwent surgery on May 25, 2012. Plaintiff was returned to Sing Sing on June 1, 2012.

## DISCUSSION

I. Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The

mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II. Application

Nurse Monroe argues that, based on the undisputed facts, any delay in diagnosing plaintiff's broken ankle was not a deprivation of adequate medical care and, moreover, Nurse Monroe did not disregard a serious risk of harm in the course of her diagnosis and treatment of plaintiff.

The Court agrees.

To succeed on a claim for constitutionally inadequate medical care under the Eighth Amendment's ban on cruel and unusual punishment, a prisoner must make a sufficient showing of "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has both an objective and a subjective component: plaintiff must establish (i) the alleged deprivation of medical care is

"sufficiently serious," and (ii) the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

A.  Objective Prong

Nurse Monroe argues plaintiff received adequate medical care because she provided reasonable treatment after examining plaintiff.

The Court agrees.

The objective component of an Eighth Amendment inadequate medical care claim has two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin v. Goord, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 844–47 (1970)). "[P]rison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishments Clause." Salahuddin v. Goord, 467 F.3d. at 279–80 (citing Farmer v. Brennan, 511 U.S. at 845) (alterations omitted).

"Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin v. Goord, 467 F.3d at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

In determining whether an alleged injury is a "serious" medical condition, "factors that have been considered include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059–60 (9th Cir. 1992)). In cases challenging the adequacy of the

7

medical treatment given, "the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" Salahuddin v. Goord, 467 F.3d at 280 (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)) (alterations omitted).

Here, no reasonable juror could conclude that Nurse Monroe did not act reasonably in response to plaintiff's ankle injury.

Plaintiff alleges Nurse Wright said to another corrections officer that plaintiff had broken a bone and needed to go to the hospital. (See Pl.'s 56.1 Statement ¶¶ 4–6). Plaintiff also alleges Nurse Monroe heard Nurse Wright's diagnosis but prevented plaintiff from immediately going to the hospital for treatment. (Id.).

Plaintiff's assertion is not supported by the record, nor is it material in light of Nurse Monroe's subsequent actions in treating plaintiff.

Even if Nurse Monroe heard Nurse Wright's alleged statement that plaintiff had broken his ankle, Nurse Monroe took reasonable action to more fully diagnose and treat plaintiff's injury. There is no dispute that Nurse Monroe ordered x-rays for plaintiff's ankle, which were taken on May 17, 2012, the day after plaintiff's injury. In addition, Nurse Monroe issued a pass for plaintiff to get examined by Dr. Alam on May 17.

In the interim, Nurse Monroe prescribed pain medication, an ACE bandage, crutches and instruction how to use them, told plaintiff to elevate and ice his leg, and ordered plaintiff remain in his cell with food brought to him. Moreover, both parties submitted a letter from Dr. Richard Weinstein, an orthopedic surgeon, in which he opines "[t]reatment was completely appropriate"

and "waiting 8 days to fix an ankle fracture is within the standard of care." (Turkle Decl. Ex. 8, at 3; Pl.'s Ex. 1).

These actions were all reasonable; the Eighth Amendment does not require Nurse Monroe to have done more.

Finally, to the extent plaintiff claims Nurse Monroe caused delay in his treatment, that allegation is also without support in the record. Rather, the record shows, and plaintiff does not provide evidence to the contrary, any delay was due to (i) the x-ray technician's unavailability until May 17, 2012; (ii) Dr. Alam's desire for a second opinion from radiologist Dr. Mueller; (iii) Dr. Mueller's report being received on May 19, 2012; and (iv) Dr. Alam's request to transport plaintiff to Mt. Vernon hospital two days later, on May 21, 2012.

Accordingly, plaintiff fails as a matter of law to meet the objective prong of an Eighth Amendment deliberate indifference claim.

B.      Subjective Prong

Nurse Monroe also argues she was not subjectively indifferent to plaintiff's serious medical needs.

The Court agrees.

The subjective component of an Eighth Amendment inadequate medical care claim requires a showing that the defendant was aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Salahuddin v. Goord, 467 F.3d at 280. "[T]he charged official must act with a sufficiently culpable state of mind." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 300 (1991)). It is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim. Chance v. Armstrong, 143 F.3d at 703. "[M]ere disagreement over the proper treatment does not

create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Id. "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Issues as to the proper course to diagnose and treat an inmate "implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment," id., at least when there is no allegation of "an act or failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" Chance v. Armstrong, 143 F.3d at 703 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)).

Here, Nurse Monroe's diagnosis was reasonable as evidenced by Dr. Alam's assessment. Even when aided by x-rays, Dr. Alam did not correctly diagnose plaintiff's broken ankle. These consistent diagnoses suggest the difficulty of assessing plaintiff's injury, and defendant acted with, at most, mere negligence, in failing to determine plaintiff broke his ankle.

As explained above, it is inconsequential whether Nurse Monroe heard Nurse Wright's alleged diagnosis that plaintiff's ankle was broken. Even if Nurse Monroe knew plaintiff's ankle was broken, Nurse Monroe did not then disregard any significant risk to plaintiff's health and safety. Nurse Monroe ordered multiple x-rays, which were administered when an x-ray tech became available the following day. Nurse Monroe also took appropriate precautions to keep plaintiff from exacerbating his injury in the intervening hours before he could see Dr. Alam.

Moreover, plaintiff's medical chart does not indicate Nurse Monroe or any other medical provider observed telltale signs of a broken ankle like discoloration, bruising, extreme swelling,

or protruding bones. There is no other evidence in the record that Nurse Monroe knew of the fracture, let alone disregarded any risk to plaintiff's health and safety.

Accordingly, plaintiff fails as a matter of law to meet the subjective prong of an Eighth Amendment deliberate indifference claim.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion (Doc. #46) and close this case. The Clerk is also instructed to mail a copy of this Opinion and Order to plaintiff at the address listed on the docket.

Dated: February 5, 2017
      White Plains, NY

                                        SO ORDERED:

                                        Vincent L. Briccetti
                                        United States District Judge

or protruding bones. There is no other evidence in the record that Nurse Monroe knew of the fracture, let alone disregarded any risk to plaintiff's health and safety.

Accordingly, plaintiff fails as a matter of law to meet the subjective prong of an Eighth Amendment deliberate indifference claim.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion (Doc. #46) and close this case. The Clerk is also instructed to mail a copy of this Opinion and Order to plaintiff at the address listed on the docket.

Dated: February 5, 2018
       White Plains, NY

SO ORDERED:

*[signature]*

Vincent L. Briccetti
United States District Judge

11